```
                    FILED ___ LODGED
            ___ RECEIVED ___ COPY

                    NOV 0 6 2020

            CLERK U S DISTRICT COURT
              DISTRICT OF ARIZONA
            BY_____ DEPUTY
```

Magdy Kamal Salem
4038 East McDowell #223
Phoenix, Arizona 85008
480 207 9948
Plaintiff, in propria persona

# IN THE UNITED STATED DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| MAGDY KAMAL SALEM, a single man,<br>Plaintiff,<br><br>vs.<br><br>MARRIOTT INTERNATIONAL, INC., d/b/a CAMELBACK INN MARRIOTT, an Arizona corporation, JOHN AND JANE DOES 1 THROUGH 100, JOHN DOE CORPORATIONS 1 THROUGH 10, and OTHER JOHN DOE ENTITIES 1 THROUGH 10, all whose true names are unknown,<br>Defendants. | Case No.: CV20-02140-PHX-DWL<br><br>COMPLAINT<br><br>(Employment Discriminatory Practices – Religion)<br><br>JURY TRIAL DEMANDED |

Plaintiff, Magdy Kamal Salem (Magdy Kamal or Mr. Kamal) for his complaint against Defendant Employer Marriott International, Inc. d/b/a/ Camelback Inn Marriott (Marriott) states:

## NATURE OF THE PROCEEDINGS

1.  This is an action under Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices on the basis of religion and to provide appropriate relief to Magdy Kamal who was adversely effected by such practices. The Equal Employment Opportunity Commission has yet to determine the Plaintiff's allegations. Therefore, he alleges that Defendant Marriott discriminated against him based on his religion, Muslim, by treating him less favorably with regard to the terms and conditions of his employment, including distribution of duties and available work hours.

2.  Defendant further discriminated against Plaintiff by transferring him within their organization to facilitate their racially motivated goals, namely isolation and separation to further the humiliation which was the genesis of the hostile work environment which Plaintiff was forced to suffer and endure. Finally, Plaintiff alleges that Defendant discriminated against him in retaliation for his complaint of discrimination, by terminating him.

## JURISDICTION AND VENUE

3.  Jurisdiction of this Court is invoked pursuant to 29 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted

pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 43 U.S.C. § 2000e-5(f)(1) and (3) ("Title VII") and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

4. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the District of Arizona.

**PARTIES**

5. Plaintiff, Magdy Kamal, is a single man, and a resident of Maricopa County, State of Arizona. At all times relevant, all acts complained of occurred within Maricopa County, such that venue is appropriate.

6. Defendant, Marriott International, Inc., d/b/a/ Camelback Inn Marriott is an Arizona corporation which has continuously been doing business in the State of Arizona and has continuously had at least fifteen (15) employees.

7. At all relevant times, Defendant Employer had been continuously been employers engaged in an industry affecting commerce within the meaning of Section 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000d(b), (g) and (h).

## STATEMENT OF CLAIMS

8. More than thirty days prior to the institution of this action, Plaintiff filed charges with the Equal Opportunity Commission alleging violation of Title VII by Defendant Marriott. All conditions precedent to the institution of this lawsuit have been fulfilled.

9. Since at least August 2001, Defendant Employer has been engaged in unlawful employment practices, in violation of Section 703(a)(1) of Title VII, 42 U.S.C. § 2000e-2(a)(1). These practices include discriminating against Mr. Kamal based on his religion, Muslim, by treating him less favorably with regard to the terms and conditions of his employment, including distribution of duties and available work hours.

8. Ongoing and continuous from date of employment through to termination, Defendant Marriott engaged in unlawful employment practices, in violation of Section 703(a)(1) of Title VII, 42 U.S.C. § 2000e-2(a)(1). These practices include discriminating against Mr. Kamal based on his religion, Muslim, by treating him less favorably by transferring him within their organization to facilitate their racially motivated goals, namely isolation and separation to further the humiliation which was the genesis of the hostile work environment which Plaintiff was forced to suffer and endure.

9. Ongoing and continuous from date of employment through to termination, Defendant Marriott engaged in unlawful employment practices, in violation of Section 703(a)(1) of Title VII, 42 U.S.C. § 2000e-2(a)(1). These practices include discriminating against Mr. Kamal based on his religion, Muslim, by treating him less favorably by discriminatory acts and conduct against him in retaliation for his complaint of discrimination ultimately terminating him after he complained of unlawful discrimination based on religion.

10. Ongoing and continuous from date of employment through to termination, Defendant Marriott engaged in unlawful employment practices, in violation of Section 703(a)(1) of Title VII, 42 U.S.C. § 2000e-2(a)(1). These practices include discriminating against Mr. Kamal based on his religion, Muslim, by treating him less favorably by termination Mr. Kamal based on his religion, Muslim, and/or his opposition to unlawful employment practices, over which he was completely justified.

11. The effect of the practices complained of herein have been to deprive Mr. Kamal of equal employment opportunities and otherwise adversely affect his status as employee, because of his religion, Muslim,

and/or because he had complained about religious discrimination at the hand and cause of Defendant Employer.

12. The unlawful employment practices complained of herein were intentional, wanton and willful, particularly as they were conducted with malice aforethought and reckless indifference to the federally protected rights of Mr. Kamal, who properly and rightfully opposed religious discrimination.

## STATEMENT OF FACTS

13. Plaintiff started working in the Banquet Kitchen of the Camelback Inn at the end of December 1998. After talking, mingling and inviting Rodrigue, Banquet Kitchen Supervisor to his home.

14. Plaintiff trusted Rodrigue and they became friends as Rodrigue helped Plaintiff in the beginning of his employment. Rodrigue then started talking to Plaintiff about his religion as he expressed his thoughts that, "Muslims know a lot of bombing".

15. After verbally expressing his personal thoughts about the Muslim religion through talks and cursing, Plaintiff asked Rodrigue not to talk about this subject anymore, as their friendship had ended.

16. Contemporaneously with the cessation of the friend like relationship during work hours, Rodrigue started being mean to Plaintiff, apparently intending to show authority over Plaintiff during work.

17. Plaintiff then spoke with Steven, Banquet Chef, who advised Plaintiff that for no apparent reason, he needed to work with someone else to avoid "problems" with Rodrigue. Plaintiff complied. Again, contemporaneously, Rodrigue started spreading in the Kitchen that Plaintiff want to kill him and that his Muslim religion kills people. Plaintiff informed Steven twice after that and complained about it. Plaintiff was told to forget about what he was saying.

18. Additionally, Rodrigue included Mr. Kamal in one of his personal problems, regardless of Plaintiff's protestations that he had nothing to do with Rodrigue's personal problems. Nevertheless, Rodrigue persisted and increased his discriminatory behavior towards Plaintiff, escalating to a point greater than harassment as Rodrigue approached Mr. Kamal with a knife in front of another associate, Ahymed the dishwasher. Mr. Kamal also complained to Bill Marriott, the owner as he was positioned at the Marriott Corporate Office in Washington, D.C.

19. In spite of Plaintiff's requests to cease religious discussions at the workplace, as Plaintiff had no trust in this environment, Marriott did nothing to

protect Plaintiff.

20. This lack of protection was demonstrated as Plaintiff soon learned that in spite of all, Rodrigue continued to spread vicious rumors at the workplace that Plaintiff was not a team worker in the Main Kitchen although Plaintiff was there at all times to help. Rodrigue refused Plaintiff assistance, saying that he was all right and then retaliated against Plaintiff by failing to provide Plaintiff with his contractual and typical fifty (50) hours of work per week to four (4) hours in one year, causing Plaintiff extreme financial insecurity, housing insecurity and emotional stress due to the loss of this income.

21. As a direct and proximate cause of the conduct of the Defendants and each of them, Mr. Kamal suffered injuries to his back, ultimately suffering a broken back within a three week time span of April, 1999. Additionally, as a direct and proximate cause of the conduct of the Defendants and each of them, Mr. Kamal's sister, Hkmat Kamal Salem passed away. Plaintiff wants Defendants held accountable for his loss, his pain and the loss of his dead sister.

22. This willful and wanton retaliatory act of reduction in work hours caused Plaintiff to suffer monetarily such that Plaintiff had to borrow money from his colleagues.

23. Well within his rights and seeking to preserve his employment,

Plaintiff reported this misconduct to Tiguan in Human Resources and told him everything. After meeting with Mr. Siegfried, Director of Food and Beverages, Plaintiff was then told he was not a team worker and that the Main Kitchen staff was afraid when Plaintiff used a knife in the kitchen. Plaintiff then told Mr. Siegfried the whole story and asked to be moved to another Kitchen attempting unilaterally and in good faith to remain employed in this extremely hostile work environment.

24. Hoping the "Rodrigue problem" was solved, Plaintiff agreed to be transferred to the Hoppin Jack, pool restaurant, and was given more hours in Main Kitchen, as well. Plaintiff started taking fifty (50) hours then, at the beginning of my transfer, I was very pleased with everyone on the team at Hoppin Jack, as well, including Daniel, Main Kitchen Chef.

25. After four (4) weeks of working successfully, on October 9, of that year, Plaintiff started working in the Main Kitchen in the afternoon of that day. The new German trainee Chris, and Plaintiff were setting the buffet. Plaintiff was in the kitchen and heard Chris as he shouted, "Magdy plates" screaming very loud with anger, so Plaintiff went to him and asked him what is the problem, he turned and went into the walk-in refrigerator. So, Plaintiff continued working and went to the buffet. When Plaintiff came back to the Main Kitchen, Chris was again

9

screaming very loudly pummeling Plaintiff with curse words and expletives as other employees and staff listened.

26. Plaintiff complained to his Supervisor, David Schneider advising that he did not want to work with Chris; Plaintiff wanted to go home. He retorted telling Plaintiff, "He could go back to where Plaintiff came from[1]." and threatened to tell Mr. Siegfried that Plaintiff voluntarily resigned his employment and quit. Plaintiff said thank you and left, with his final thoughts that he simply comes to work, not to make friends. Plaintiff cannot work with people who have no respect for others and who use cursing language to communicate, which is clearly against the policy of the Defendant.

**PRAYER FOR RELIEF**

Wherefore, the Plaintiff requests respectfully the following relief from this Court:

A. Grant a permanent injunction enjoining Defendant Employers, their officers, successors, assigns, and all persons in active concert or participation with

---

[1] Plaintiff is an Egyptian national. David advised me to return to my "expletive expletive country", as David's prejudices overtook his reason. David additionally told he "did not want to see my face" around the Kitchen, further indicating the depth of David's discriminatory animus.

them, from engaging in discrimination based on religion, and from engaging in retaliation for opposition to unlawful employment practices.

    B.    Order Defendant Employer to institute and carry out policies, practices, and programs which provide equal employment opportunities for the Muslim individuals, and other affirmative relief necessary to eradicate the effects of their unlawful employment practices, including but not limited to issuance of a written apology.

    C.    Order Defendant Employers to make whole Mr. Kamal, by providing appropriate back pay with prejudgment interest, in the amount of ($150,000,000.00) ONE HUNDRED FIFTY MILION DOLLARS AND NO CENTS, and to provide Mr. Kamal front pay and/or reinstatements INCLUSIVE.

    D.    Order Defendant Employer to make whole Mr. Kamal, by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described herein, including job search and relocation expenses, in the amount of ($150,000,000.00) ONE HUNDRED FIFTY MILION DOLLARS AND NO CENTS.

    E.    Order Defendant employers to make whole Mr. Kamal, by providing compensation for past and future non pecuniary losses resulting from the unlawful practices complained of herein, including emotional pain and suffering,

inconvenience, loss of enjoyment of life, and humiliation, in the amount of ($150,000,000.00) ONE HUNDRED FIFTY MILION DOLLARS AND NO CENTS.

F.  Order Defendant employers to pay punitive damages for their malicious and/or reckless conduct as described herein, in and additional amount of ($150,000,000.00) ONE HUNDRED FIFTY MILION DOLLARS AND NO CENTS.

G.  Grant such further relief as this Court deems necessary and proper in the public interest.

**JURY TRIAL DEMAND**

Plaintiff requests a jury trial on all questions of fact raised by this complaint.

RESPECTFULLY SUBMITTED this 5TH day of November, 2020.

_____
Magdy Kamal, Plaintiff